United States District Court
Southern District of Texas
**ENTERED**
January 13, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| THOMAS O. MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:21-CV-00202 |
| | § | |
| EDUARDO BALDERAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO RETAIN CASE AND DISMISS CERTAIN CLAIMS

Plaintiff Thomas O. Martinez, appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

Plaintiff has stated for purposes of screening: (1) due process claims based on the denial of tablets and commissary privileges against **Officer Isabel Ramirez, Officer Brown, Officer Lerma, and Officer Ray Nevado** in their individual capacities; and (2) deliberate indifference claims based on the deprivation of sleep against **Officer Ramirez, Officer Brown, and Officer Lerma** in their individual capacities. Accordingly, it is respectfully recommended that these claims be **RETAINED.** The undersigned will order service on Defendants Ramirez, Brown, Lerma, and Nevado.

For the reasons set forth below, the undersigned further recommends that: (1) Plaintiff's claims against all **Defendants** in their official capacities be **DISMISSED**; and (2) Plaintiff's remaining claims against all Defendants be **DISMISSED with prejudice** for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

I.  JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

II. PROCEDURAL BACKGROUND AND ALLEGATIONS

Plaintiff is currently confined at the San Patricio County Jail in Sinton, Texas. Plaintiff's allegations in this case arise in connection with his stay as a pretrial detainee at the San Patricio County Jail. In this action, Plaintiff sues the following jail officials: (1) Major Eduardo Balderas; (2) Officer Isabel Ramirez; and (3) Officer Brown. (D.E. 1, pp. 1, 3). Plaintiff seeks monetary relief.

At the Court's direction, Plaintiff filed a More Definite Statement to explain his claims. (D.E. 10). Plaintiff clarified in his More Definite Statement that he sues Defendants in their individual and official capacities. (D.E. 10, pp. 3-4). On October 28, 2021, the undersigned conducted a *Spears*[1] hearing. The following representations were

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

made either in Plaintiff's Original Complaint (D.E. 1), More Definite Statement (D.E. 10), or at the *Spears* hearing.

At the time Plaintiff filed this action, he was a pretrial detainee awaiting trial on a theft charge that was enhanced to a felony based on a prior conviction. (D.E. 10, p. 1). Plaintiff was taken into custody on April 14, 2021 and has been in continuous custody at the San Patricio County Jail since that date. (D.E. 18, pp. 5-6). Plaintiff testified at the *Spears* hearing that he subsequently was convicted of the charge and was awaiting transfer to a state prison. (D.E. 18, p. 4).

An unidentified offender was caught passing notes. As a result, the officer on duty imposed tablet and commissary restrictions on Plaintiff and all of the other inmates in the dormitory. Another offender was caught making wine and admitted to it. In a third instance, another inmate impermissibly hung a towel over his bunk area. (D.E. 18, p. 7). Lastly, Plaintiff testified about a fourth incident where Officer Ramirez cut down a clothesline set up by three inmates other than Plaintiff. (D.E. 18, pp. 22, 27).

As a result of these instances, Plaintiff and the ten or eleven other inmates in the dorm were punished and lost money from renting tablets and the ability to purchase movies and other media. (D.E. 18, pp. 6-7, 25-26). Plaintiff did not have any disciplinary cases brought specifically against him as a result of this prohibited conduct. However, Plaintiff lost commissary and tablet privileges for period of time totaling three or four weeks. (D.E. 18, pp. 6-7).

Plaintiff testified that he paid $5.00 a month to have tablet privileges where he could purchase additional movies, videos, and songs. (D.E. 18, p. 8). According to Plaintiff, he lost the movies and videos that he had purchased for the tablets. (D.E. 18, p. 7). Plaintiff estimates that he spent and lost $50.00 in connection with the denial of tablet privileges. (D.E. 18, p. 8). Plaintiff also lost the ability to add funds to his commissary account, which adversely impacted his ability to purchase commissary items. (D.E. 18, pp. 7, 11). Plaintiff holds Defendants Brown and Ramirez responsible for his injuries suffered as a result of the commissary and tablet restrictions. (D.E. 18, p. 12).

Plaintiff testified that "rack-up time" at the jail is 10:00 p.m., when the inmates are required to go to bed and all audio devices are turned off. (D.E. 18, p. 13). The lights and radio are supposed to be turned off until 4:00 a.m. for breakfast. (D.E. 18, p. 13). However, on an average of four or five nights a week since Plaintiff was taken into custody, jail officials and guards left both the lights and radio on well after 10:00 p.m. (D.E. 18, pp. 13-15). These officers leave the audio on the speaker system so loudly that inmates cannot go to sleep. (D.E. 18, p. 13).

Plaintiff testified at the *Spears* hearing that he could not identify any of the officers, with the exception of Defendants Brown and Ramirez, as their nametags were turned backwards. (D.E. 18, pp. 13-14, 16). Plaintiff further testified that he could only get three or four hours of sleep on the nights when the lights and radio were left on. (D.E. 18, p. 15). Plaintiff has not complained to medical about issues concerning sleep out of fear he would be treated with bias and indifference by medical officials. (D.E. 18, p. 17).

Plaintiff has been subjected to occasional shakedowns after "rack-up time" for no reason. (D.E. 18, p. 16). According to Plaintiff, Officers Brown and Ramirez conducted the shakedowns of Plaintiff and the other inmates. (D.E. 18, p. 17). Shakedowns occurred on seven occasions since Plaintiff was taken into custody in April 2021. (D.E. 18, p. 17). Plaintiff suffered stress and no physical injuries as a result of the shakedowns. (D.E. 18, pp. 17-18).

The San Patricio County Jail does not have a law library. (D.E. 18, p. 19). Plaintiff testified that, when he lost his tablet privileges, he lost the ability to access legal materials available on one of the tablet's free apps.. (D.E. 18, p. 19). Plaintiff states that he was unable to research whether he could get his enhancement dropped in connection with his charges. (D.E. 18, p. 19). Plaintiff acknowledges that he was represented by counsel until the time he was convicted. (D.E. 18, pp. 19-20).

Plaintiff sues Major Balderas in his supervisory capacity in that Officers Brown and Ramirez acted under his authority to punish Plaintiff. (D.E. 18, pp. 20-21). Plaintiff sues Officers Brown and Ramirez for: (1) enforcing through verbal commands the various restrictions noted above against Plaintiff; and (2) conducting the shakedowns. (D.E. 18, pp. 22-25).

In a separate prisoner civil rights action filed after the *Spears* hearing, Plaintiff raised many of the same allegations set forth above against additional jail officials. (*Martinez v. Lerma, et al.*, Case No. 2:22-cv-6, D.E. 1). Specifically, Plaintiff named Officers Lerma and Ray Nevado as defendants. Magistrate Judge Jason B. Libby

consolidated Case No. 2:22-cv-6 with this case and directed the Clerk of Court to docket Plaintiff's complaint filed in Case No. 2:22-cv-6 in this case. (*Martinez v. Lerma, et al.*, Case No. 2:22-cv-6, D.E. 6). The undersigned will construe the pleading, docketed as Plaintiff's second prisoner civil rights complaint (D.E. 23), as an amended complaint.

Plaintiff alleges in the amended complaint that: (1) Officer Lerma placed the whole dorm on tablet and commissary restrictions because another offender had a towel hanging on a line; (2) Officer Lerma conducted a shakedown after rack-up time depriving Plaintiff and other inmates of sleep; and (3) Officer Nevado placed the whole dorm on tablet and commissary restrictions because another offender was making wine. (D.E. 23, p. 4). Plaintiff reiterated that the loss of tablet and commissary privileges caused him to lose money on media purchase for his tablet. (D.E. 23, p. 4).

### III. LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an

indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail

on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

IV.  **DISCUSSION**

   **A. Official Capacity Claims**

Suits against individuals in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (internal quotations and citation omitted). Thus, to the extent Plaintiff seeks to sue Defendants in their official capacities, it is effectively a suit against the officials' office, San Patricio County. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Even if the Court were to substitute San Patricio County on behalf of Defendants in their official capacities, Plaintiff would not be able to state a § 1983 claim against San Patricio County. A municipality is liable for the constitutional violations of its employees only if the alleged constitutional deprivations resulted from municipal policy. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978). *See also Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 166 (5th Cir. 2010) (noting that a municipality may not be subject to liability merely for employing a tortfeasor; liability requires deliberate action

attributable to the municipality that is the direct cause of the alleged constitutional violation). Liability of a municipality under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Plaintiff fails to cite any county policy or practice that resulted in the violation of his constitutional rights. Accordingly, it is respectfully recommended that Plaintiff's claims against Defendants in their official capacities be dismissed with prejudice.

### B. Supervisory Defendant

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). Thus, a supervisor who is not personally involved is liable only if he has implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304.). "Mere knowledge and acquiescence on a supervisor's part is insufficient

to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff alleges that Officers Brown and Ramirez acted under Major Balderas's authority to punish Plaintiff. (D.E. 18, pp. 20-21). Plaintiff, therefore, attempts to sue Major Balderas in his supervisory capacity. He alleges nothing in his Original Complaint, More Definite Statement, or testimony at the *Spears* hearing to suggest that he had any personal involvement with regard to the incidents at issue in this action. Plaintiff further alleges nothing to indicate that Major Balderas otherwise engaged in any behavior to create supervisory liability. The undersigned respectfully recommends, therefore, that Plaintiff's claims against Major Balderas in his supervisory capacity be dismissed with prejudice for failure to state a claim for relief.

### C. Tablet and Commissary Restrictions

"Pretrial detainees, unlike convicts, have a liberty interest in avoiding punishment—an interest that derives from the Constitution itself." *Surprenant v. Rivas*, 424 F.3d 5, 17 (1st Cir. 2005). In other words, pretrial detainees have a substantive due process right not to be housed under conditions of confinement that constitute punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979).

Not every restriction imposed during detention "amounts to punishment in the constitutional sense." *Bell*, 441 U.S. at 537. "[T]here is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Hamilton v. Lyons*, 74 F.3d 99, (106 (5th Cir. 1996) (citing *Bell*, 441 U.S. at 539 n.21). Additionally, "[r]estraints that are

reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540.

As noted above, Plaintiff was confined as a pretrial detainee for the majority of his time at the San Patricio County Jail. Plaintiff complains about losing commissary and tablet privileges resulting from four separate incidents. According to Plaintiff, Defendants Ramirez, Brown, Lerma, and Nevado punished Plaintiff even though he was not involved in any of the impermissible activities undertaken by other inmates. Plaintiff's allegations reflect that he was punished by losing tablet privileges for several weeks, which cost him $50.00 worth of media purchased for tablet use, as well as the ability for several weeks to add funds to his commissary account for purchase of items.

Plaintiff's allegations, take as true, indicate that Defendants Ramirez, Brown, Lerma, and Nevado may have imposed more than a *de minimis* amount of punishment on Plaintiff, in violation of his due process rights, as a result of actions taken by other inmates. Accordingly, the undersigned respectfully recommends that the Court retain Plaintiff's due process claims related to the imposition of tablet and commissary restrictions against Defendants Ramirez, Brown, Lerma, and Nevado in their individual capacities.

### D. Denial of Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)).

The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Jones*, 188 F.3d at 325 (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions, validity of confinement, or conditions of confinement).

"The right of access to court applies to both convicted prisoners and pretrial detainees who are jailed pending trial." *Fox v. Campbell*, No. 6:09cv75, 2009 WL 1076809, at *2 (E.D. Tex. Apr. 21, 2009) (citing *United States v. Maya-Gomez*, 860 F.2d 706, 743 (7th Cir. 1988)). "A county satisfies the duty with respect to indigent pretrial detainees by appointing an attorney to represent them." *Id.* (citing *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996)). If the pretrial detainee is not provided with adequate assistance from someone trained in the law, the county must provide the detainee with an adequate law library. *Id.* (citing *Green v. Ferrell*, 801 F.3d 765, 772 (5th Cir. 1986) and *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985)).

Because the right of access is not a "freestanding right," to state a cognizable First Amendment claim, the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts. *Lewis,* 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts. *Lewis*, 518 U.S. at 349. In particular, to succeed on a claim of denial of access to courts, a plaintiff must show that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because

of the alleged denial. *See Lewis*, 518 U.S. at 356. He must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

Liberally construed, Plaintiff claims that the actions of Officers Ramirez and Brown denied him access to the courts. Plaintiff alleges that the San Patricio County Jail has no physical law library and that, because he lost tablet privileges, he was unable to access the law library apps on the tablet. Plaintiff testified at the *Spears* hearing that he was unable to research whether he could get his enhancement dropped in connection with his theft charge. (D.E. 18, p. 19).

Plaintiff acknowledges that he was represented by counsel until the time he was convicted at trial. (D.E. 18, pp. 19-20). Because he was represented by counsel, jail officials had no obligation to provide Plaintiff with access to legal materials through either a physical law library or a tablet app. Plaintiff's allegations, accepted as true, fail to indicate that indicate that he lost an actionable or nonfrivolous claim or was prevented from presenting such a claim because of the alleged denial of tablet privileges. Accordingly, the undersigned respectfully recommends that Plaintiff's First Amendment claim for denial of access to courts be dismissed against Defendants Ramirez and Brown in their individual capacities for failure to state a claim for relief.

### E. Sleep Deprivation

As a pretrial detainee contesting the conditions of his confinement, his claim invokes the protection of the Fourteenth Amendment's Due Process Clause. *See Cadena*

*v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2002). Pretrial detainees have a constitutional right under the Due Process Clause to protection from harm during their confinement. *See Brumfield v. Hollins*, 551 F.3d 322, 327 (5th Cir. 2008) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)).

The duty to protect pretrial detainees from harm under the Fourteenth Amendment's Due Process Clause is the same as the one afforded to convicted prisoners under the Eighth Amendment. *See Hare*, 74 F.3d at 650 ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including protection from harm, during their confinement."). Thus, Plaintiff's deliberate indifference claims regarding sleep deprivation will be analyzed under the same principles. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

"The Constitution does not mandate comfortable prisons . . . but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (per curiam) (internal quotations omitted)).

Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measure

of life's necessities" violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).

A constitutional violation under the Eighth Amendment occurs only when two requirements are met. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). To prove a constitutional violation, an inmate need not show that a death or serious injury already has occurred, but rather that there is a "substantial risk of serious harm." *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015) (citing *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004)). Because "sleep undoubtedly counts as one of life's basic needs," any "[c]onditions designed to prevent sleep . . . might violate the Eighth Amendment." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999). *See also Walker v. Schult*, 717 F.3d 119, 126-28 (2d Cir. 2013) (concluding that sleep deprivation may deny prisoner of a minimal civilized measure of life's necessities).

"Second, under a subjective standard, [the court] must determine whether the prison official responsible was deliberately indifferent to inmate health and safety." *Woods*, 51 F.3d at 581 (internal quotations and citation omitted). Deliberate indifference is more than mere negligence. *Farmer*, 511 U.S. at 835. To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id.* at 837.

Plaintiff contests the conditions of his confinement at the San Patricio County Jail in that he was denied proper sleep. Plaintiff alleges that jail officials deprived him of adequate sleep by leaving music on, playing the music loudly, and leaving lights on during the times when offenders are required to be in bed. According to Plaintiff, he averages between three to four hours of sleep per night. Plaintiff testified at the *Spears* hearing that, with the exception of Officers Ramirez and Brown, he could not identify other officers responsible for his sleep deprivation as their nametags were turned backwards. (D.E. 18, pp. 13-14, 16). Plaintiff further alleges in his amended complaint that Officer Lerma conducted several shakedowns of Plaintiff after rack-up time, which further led to sleep deprivation. (D.E. 23, p. 4).

Plaintiff's allegations, accepted as true, are sufficient at this early stage in the litigation to state sleep deprivation claims against Defendants Ramirez, Brown, and Lerma. Further factual development of these claims may lead to the identification of additional defendants responsible. Accordingly, the undersigned respectfully recommends that the Court retain Plaintiff's sleep deprivation claims against Defendants Ramirez, Brown, and Lerma in their individual capacities.

**F. Excessive Force**

For several years, district courts within the Fifth Circuit have followed the rule that, "when a pretrial detainee is allegedly the victim of a detention officer's use of excessive force, as explained in *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (1993) ... such a claim is subject to the same analysis as a convicted prisoner's claim for use of excessive

force under the Eighth Amendment." *Kitchen v. Dallas County*, 759 F.3d 468, 477 (5th Cir. 2014). Under this standard, the issue is whether the defendant used force maliciously and sadistically for the very purpose of causing harm, or in a good faith effort to maintain or restore discipline. *Id.*

In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), however, the Supreme Court held that instead of the subjective test previously applied, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id.* at 397. The Supreme Court concluded that, in order to prevail, a pretrial detainee must show that the force purposely or knowingly used against him was objectively unreasonable. *Id.* To determine whether a use of force was objectively reasonable, a court should consider the following factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant and (6) whether the plaintiff was activity resisting. *Id.*

Moreover, to state an actionable excessive force claim, "the plaintiff [must] have suffered at least some form of injury that is more than *de minimis*." *Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (affirming dismissal on summary judgment of pretrial detainee's excessive force claim where he failed to allege he suffered any physical injury)). *See also Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes

no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted));

Liberally construed, Plaintiff asserts that Defendants Ramirez, Brown, and Lerma subjected Plaintiff to excessive force during the course of several shakedowns that occurred after Plaintiff was taken into custody in April 2021. Plaintiff testified at the *Spears* hearing, however, that he suffered no physical injuries as a result of the shakedowns. (D.E. 18, pp. 17-18). Plaintiff's allegations, taken as true, reflect that he did not suffer from any injury, much less a *de minimis* injury, as a result of the shakedowns conducted by Defendants Ramirez, Brown, and Lerma. *See Velazquez v. Baker*, No. 5:20-CV-078, 2021 WL 812505, at *6 (N.D. Tex. Jan. 28, 2021) (finding that the pretrial inmate's failure to allege a physical injury arising from an officer's use of force failed to state an excessive force claim). Accordingly, the undersigned respectfully recommends that Plaintiff's excessive force claims be dismissed against Defendants Ramirez, Brown, and Lerma in their individual capacities for failure to state a claim for relief.

## V.    RECOMMENDATION

For the reasons stated above and for purposes of § 1915A 1915(e)(2), Plaintiff has stated sufficient facts that, if true, state: (1) due process claims (loss of tablet and commissary privileges) against **Officers Ramirez, Brown, Lerma, and Nevado** in their individual capacities; and (2) deliberate indifference claims (sleep deprivation) against **Officers Ramirez, Brown, and Lerma** in their individual capacities. Accordingly, it is

respectfully recommended that these claims be **RETAINED.** The undersigned will order service as to these defendants by separate order.

For the reasons discussed above, it is respectfully recommended further that: (1) Plaintiff's claims against all **Defendants** in their official capacities be **DISMISSED**; and (2) Plaintiff's remaining claims against Defendants be **DISMISSED with prejudice** for failure to state a claim pursuant to §§ 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted on January 13, 2022.

_____
Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).